UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TIFFANY HARRIS,**<br>    Plaintiff,<br><br>v.<br><br>**DENIS MCDONOUGH,**<br>*Secretary, Department of*<br>*Veterans Affairs*<br>    Defendant. | Case No. 2:22-cv-193-CLM<br><br>*and consolidated case no.:*<br>2:22-cv-194-CLM. |

## MEMORANDUM OPINION

Pro se Plaintiff Tiffany Harris sues Denis McDonough, Secretary of the Department of Veterans Affairs, for workplace mistreatment under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq.* McDonough moves for summary judgment, arguing that Harris failed to exhaust her administrative remedies and failed to show a causal connection between her removal and her protected activity. (Doc. 46).

For the reasons stated below, the court **GRANTS** summary judgment for McDonough on Harris's retaliation claim based on the removal of Harris's employment. The court **DENIES** McDonough summary judgment on Harris's claim that she suffered a retaliatory hostile-work-environment in response to her participation in protected activity. The court will try that claim to a jury.

## BACKGROUND

### A. Factual Background

1. *The workplace allegations*: Tiffany Harris worked for the Department of Veterans Affairs ("VA") as an Advanced Medical Support Assistant. Harris says that from February 2020 to July 2021, she experienced discrimination, retaliation, discriminatory harassment, and a hostile work environment.

Harris submitted a 13-page letter with her complaint, specifying the conduct she endured at the VA. In this letter, Harris alleges that management and her co-workers often placed white and orange particles in her work area which affected her breathing because she was allergic.[1] Harris says this behavior began after her supervisor demanded her Social Security number, accessed her medical records, and discovered her allergies. According to Harris, her co-workers would place the particles in the carpet underneath her desk and drop particles on her desk as they walked by, which made her struggle to breathe. She said she was told to sit in an assigned seat in the file room where her desk was trashed daily.

Harris also alleges a generally poor working environment with co-workers: she says they would not acknowledge her presence, encourage others not to interact with her, and yell at her. According to Harris, her co-workers fabricated reports to destroy her character, procured her unjustified suspension, and later her removal.

Harris said Supervisor Joyce Gilbert gave her written counselings for doing things other employees did not get in trouble for, called VA police on her to escort her out of the building several times, denied her telework but allowed others to telework, and gave her work assignments with impossible deadlines to meet. Management also charged Harris with absence without leave (AWOL) when she was sent home and revoked her leave under the Family Medical Leave Act. Harris also says she was denied mandatory Medical Support Assistant training and that Gilbert canceled her mid-year evaluation.

2. *The EEOC claim, investigation, and removal*: According to her complaint, Harris initiated and participated in an internal harassment investigation with VA's facility detective, John Moore, in February 2020. Harris says that her supervisor Joyce Gilbert and Team Lead Porsha Oakes derailed the investigation. She says when the investigator came to

---

[1] In her deposition, Harris says these particles are iodine and that she is allergic to iodine. But Harris never refers to the particles as iodine in her complaint. (*See* Doc. 43-15, p. 46).

the office, Gilbert and Oakes would cover up the particles on the floor and lie to the investigator.

In December 2020, Harris filed an EEOC charge.

Harris was ultimately terminated in July 2021. First, Debbie Litton created a notice of proposed removal that cited six instances Litton said supported Harris's removal. Next, Dr. Kokoyi sent Harris a notice of removal that sustained Litton's charges and gave these reasons for removing Harris's employment:

- Inappropriate Conduct in the Workplace;
- Failure to Follow Supervisory Instructions;
- Failure to Report to Assigned Work Area; and
- Absent Without Leave (AWOL).

(*Id.*, p. 1). In sum, here is the relevant timeline of events surrounding Harris's protected activity and removal:

- February 2020: Harris participated in a harassment investigation and filed an internal claim with the VA's EEO office.[2]
- March 2020: Harris received a written counseling for taking photos and videos of the particles and employees in her workspace.
- June 2020: Harris received a proposed notice of suspension and later a five-day suspension.
- July 2020: Harris was suspended for failure to follow supervisory instruction.
- December 15, 2020: Harris filed a complaint of discrimination with the EEOC.
- January 2021: Gilbert provided Harris a poor performance review.
- June 2, 2021: Harris received a notice of proposed removal. (Doc. 43-18).

---

[2] Harris says she received her right to sue letter in February 2022.

- June 29, 2021: Harris received a notice of removal from Dr. Olapido Kokoyi, Interim Medical Center Director. (Doc. 43-14).

3. *MSPB hearing*: Harris says Dr. Kokoyi and the VA removed her because she filed the December 2020 EEOC complaint. So she appealed the removal to the Merit Systems Protection Board ("MSPB"). (Doc. 43-16). The MSPB held a hearing and heard testimony from Harris, her supervisors, and some co-workers. After hearing testimony from both sides, the MSPB affirmed the VA's decision to terminate Harris, sustaining the specifications and charges that the VA had lodged against Harris. (Doc. 43-17). The MSPB also found that Harris failed to meet her burden of establishing that retaliation was a motivating factor in the decision to terminate her. (*Id.*).

At the same time, Harris continued to pursue her EEOC charge, including amendments and appeals. Here's the relevant timeline:

- July 12, 2021: Harris amended her December EEOC complaint for the 15th time. (Doc. 43-4).
- February 8, 2022: The EEOC issued a decision and order in the VA's favor. (Doc. 43-7).
- February 10, 2022: Harris appealed the EEOC's final decision and order. (Doc. 43-9).
- February 11, 2022: The VA adopted the EEOC administrative judge's decision and issued a final order. (Doc. 43-8).
- February 14, 2022: Harris filed two suits in this federal court against Denis McDonough (as Secretary of the Department of Veterans Affairs); the Department of Veterans Affairs; Joyce Gilbert; Porsha Oakes; and Dr. Oladipo Kukoyi. (*Harris v. McDonough et al.*, 2:22-cv-193-CLM; *Harris v. McDonough et al.*, 2:22-cv-194-CLM).
- September 25, 2023: The EEOC's Office of Federal Operations affirmed the agency's final order adopting the administrative judge's decision. (Doc. 43-11).

- September 27, 2023: Harris requested reconsideration of her appeal. (Doc. 43-12).
- December 11, 2023: The Office of Federal Operations affirmed its decision. (Doc. 43-13).

### B. Procedural Background

Harris filed two complaints in this federal court against McDonough to challenge her workplace mistreatment. (Case No. 2:22-cv-193, Doc. 1; Case No. 2:22-cv-194, Doc. 1). Harris also moved for leave to proceed *in forma pauperis*. (Doc. 2). The magistrate judge consolidated Harris's cases (doc. 4), screened her complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), and ordered Harris to file a consolidated amended complaint to correct pleading deficiencies. (Doc. 5).

Harris filed a consolidated amended complaint, bringing claims under Title VII of the Civil Rights Act of 1964 against McDonough, the Department of Veterans Affairs, Joyce Gilbert, Porsha Oakes, and Dr. Oladipo A. Kukoyi. Harris described her claims as based on termination of employment, failure to promote, unequal terms and conditions of employment, retaliation, bullying, and harassment. (Doc. 7, p. 4). This court then screened Harris's amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) and found that Harris plausibly alleged a violation of the participation clause of Title VII's antiretaliation provision against Denis McDonough, Secretary of the Department of Veterans Affairs. (Doc. 12). So Harris's participation clause retaliation claims are the only claims here at the summary judgment stage.

### STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine

dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## HARRIS'S RESPONSE

After McDonough moved for summary judgment, the court provided Harris with a notice and explanation of how Rule 56 works. (*See* Doc. 47). The court also reminded Harris that her response to McDonough's motion was due on March 20, 2024. (*Id.*, p. 2). Harris did not file a response brief. Instead, she filed a notice of evidentiary submission that provided a timeline of events and asked the court to refer to the evidence she submitted along with her complaint in ruling on McDonough's motion. (Doc. 44). The court has reviewed both Harris's and McDonough's evidentiary submissions and considered them in the light most favorable to Harris. In reviewing McDonough's motion, the court has also kept in mind that it cannot base its entry of summary judgment on the mere fact that Harris did not file a response brief but "must consider the merits of the motion." *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

## DISCUSSION

Harris alleges two distinct claims: (a) retaliation that resulted in her removal from employment, and (b) retaliation that resulted in a hostile work environment. The court addresses the claims in this order.

### I. Removal Retaliation Claim

Harris claims that McDonough removed her from employment in retaliation for filing an EEOC complaint. McDonough argues that he is entitled to judgment on this claim for two reasons: (1) Harris failed to exhaust her removal-based claim; and, (2) Harris cannot show a causal connection between her removal and her EEOC complaint. The court agrees with both reasons.

6

### A. Failure to Exhaust: Removal Retaliation Claim

A federal employee bringing a Title VII claim must exhaust her administrative remedies before suing her employer in federal court. *See Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). When a federal employee "complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Kloeckner v. Solis*, 568 U.S. 41, 45 (2012).

A federal employee presenting a mixed case has two options. She may either file a discrimination complaint with the EEOC or file an appeal with the MSPB, but she may not do both. *Fleck v. Sec'y of U.S. Dep't of Transp.*, 826 F. App'x 782, 784 (11th Cir. 2020). (citing 29 C.F.R. § 1614.302(b)). If an employee files "both a mixed case complaint and appeal on the same matter[,] . . . whichever is filed first shall be considered an election to proceed in that forum." 29 C.F.R. § 1614.302(b). When "the MSPB rejects an employee's claims in a mixed case, the employee may: (1) seek the EEOC's review of his discrimination claims; (2) file a civil action in federal district court raising both his discrimination and termination claims; or (3) petition the Federal Circuit for review of the termination decision." *Lee v. United States*, 544 F. App'x 898, 900 (11th Cir. 2013) (citing 5 U.S.C. §§ 7702(b)(1), 7703(b)(1)-(2)). "For those who take the [second] option, 'a final decision from the MSPB exhausts an employee's administrative remedies and allows him to seek judicial review.'" *Council v. Am. Fed'n of Gov't Emps. (AFGE) Union*, 477 F. App'x 648, 653 (11th Cir. 2012) (quoting *Chappell v. Chao,* 388 F.3d 1373, 1375 (11th Cir. 2004)).

The record shows that Harris appealed her removal to the MSPB on July 9, 2021. (Doc. 43-16). Three days later, Harris amended her EEO complaint to include a claim that her removal was in retaliation for engaging in protected activity. (Doc. 43-4, pp. 6-7). Because Harris appealed to the MSPB before amending her EEO complaint, she made a binding election to proceed before the MSPB instead of the EEOC. *See* 29

C.F.R. § 1614.302(b). So Harris was required to wait for a final decision from the MSPB before challenging her removal in federal district court. *Council*, 477 F. App'x at 653. Harris, however, filed suit in this court about a month before the MSPB issued its decision affirming the VA's removal of Harris. (*See* Docs. 1; 43-17). Because Harris filed her original complaints before the MSPB issued its final decision, Harris failed to exhaust her administrative remedies. *See Stoll v. Principi*, 449 F.3d 263, 267 (1st Cir. 2006) (affirming dismissal for failure to exhaust administrative remedies when plaintiff filed original complaint 9 months before MSPB issued its final decision).

### B.   Merits: Removal Retaliation Claim

Even if Harris adequately exhausted her administrative remedies, she has failed to present evidence that would permit a reasonable juror to find that the VA terminated her because she filed an EEOC complaint.

Under Title VII's federal-sector provision, federal employers must make "[a]ll personnel actions . . . free from any discrimination," including retaliation. *See* 42 U.S.C. § 2000e-16(a). "[I]f retaliation for engaging in a protected activity under Title VII taints the decision-making process for any personnel action, that violates the federal-sector provision—even if the employer would have made the same decision absent retaliation." *Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024). So a federal employee bringing a Title VII retaliation claim needn't establish "but-for" causation, and the traditional *McDonnell Douglas* framework does not apply at summary judgment. *See id.* Instead, Harris's removal retaliation claim will survive summary judgment if she "has submitted evidence that would allow a reasonable jury to find that retaliation played *any* part" in the decision to remove her from federal service. *Id.* (cleaned up).

It is undisputed that Dr. Kukoyi removed Harris from federal employment. Harris argues that Dr. Kukoyi had an impermissible conflict of interest because he was practicing sorcery against her, called her crazy when she was responding to what happened to her, and knew about the situation before deciding to terminate her. (Doc. 43-16, pp. 5–6). But when

Harris was asked in her deposition about how her removal was connected to her EEO activity, Harris provided only speculative responses. For example, Harris testified that she *believed* Dr. Kukoyi removed her employment in retaliation for her protected activity to cover up what was happening to her at the VA and because Dr. Kukoyi had begun to participate in the dropping of particles in Harris's work area. Harris, however, struggled to explain how she knew Dr. Kukoyi was retaliating against her:

> Q.  What other reasons do you have for believing that Dr. Kukoyi's decision to remove you was in retaliation for your protected activity?
>
> A:  I'm not exactly sure. I just know I was retaliated against. So I'm not exactly sure. I know he played a part in the retaliation. So the only thing that I can think of is to cover up on what was being done at the VA. So I don't really know.
>
> Q:  Okay. I'm going to restate what I understood was your testimony. And let me know if I'm describing it accurately.
>
> A:  Okay.
>
> Q:  You believe that Dr. Kukoyi decided to remove you in retaliation for your protected activity because it makes sense as part of a cover-up of the truth of what was actually going on?
>
> A.  Part of it, yes.
>
> Q:  What is the other part of it?
>
> A.  Once again, he played a role in my retaliation. He allowed the supervisor—supervisors and the director, Debbie Litton, as far as to make decisions on my behalf which was falsified. Pretty much—like I said,

9

> everything was falsified. So it was covered up.
>
> I can't—I don't really know. As far as—I don't know, I guess, how to answer that. But the only thing that I can say was that everything was covered up on what was being done to me because I was in protected activity.

(Doc. 43-15, pp. 9–10).

Because Harris is the non-movant, the court will assume that Dr. Kukoyi knew about Harris's protected activity when he removed her from federal employment. But Dr. Kukoyi's knowledge of Harris's protected activity, standing alone, isn't "evidence that would allow a reasonable jury to find that retaliation played any part" in the decision to remove Harris from federal service. *See Buckley*, 97 F.4th at 798 (emphasis omitted). And "inferences in favor of a plaintiff can be based only on evidence—not on speculation." *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020). So Harris's speculation that her protected activity played a role in Dr. Kukoyi's decision fails to create a genuine dispute of material fact.

As a result, Harris's only evidence linking her removal from federal employment to her protected activity is the temporal proximity between Harris's protected activity and Dr. Kukoyi's decision to fire her. Five months passed between Harris's last EEO complaint and the issuance of Harris's notice of proposed removal. (Docs. 43-2, 43-18). And another month passed before Dr. Kukoyi made the final decision to remove Harris. (Doc. 43-14). "That is far too long to allow for the inference that retaliation infected the decision-making process that resulted in [Harris's] dismissal." *Buckley*, 97 F.4th at 799 (holding that 7-8-month gap is too long and citing with approval cases that have held that a 3-4-month gap is too long). Because Harris presents no evidence that would allow a juror to connect her EEOC complaint and her termination, McDonough is entitled to judgment on Harris's removal-related retaliation claim. For this reason, plus Harris's failure to exhaust, the court will **GRANT** McDonough's motion for summary judgment.

## II. Retaliatory Hostile-Work-Environment Claim

Harris claims that her work environment was hostile because she participated in a harassment prevention program and filed EEOC complaints. As detailed below, McDonough makes only one argument for judgment on this claim (failure to exhaust) but acknowledges that argument is foreclosed by Eleventh Circuit precedent. McDonough does not seek judgment on the merits, meaning this claim will go to trial.

### A. Failure to Exhaust: Retaliatory Hostile-Work-Environment

Like Harris's removal retaliation claim, McDonough contends that Harris failed to exhaust her retaliatory hostile-work-environment claims because Harris didn't wait long enough to file this lawsuit.

Harris appealed the EEOC's final order in favor of the VA to the Office of Federal Operations. A complainant who files an appeal may only file a civil action in federal district court "[a]fter 180 days from the date of filing [the] appeal with the Commission if there has been no final decision by the Commission." 29 C.F.R. § 1614.407(d). But Harris filed these actions only four days after she appealed to the Office of Federal Operations. (*See* Docs. 43-9; 43-10).

That said, McDonough concedes that binding Eleventh Circuit precedent prevents this court from dismissing Harris's claims for failure to exhaust if Harris "cooperated in good faith with the EEOC, and [her] early filing did not prevent the EEOC from investigating [her] complaint for the full 180 days." *See Brown v. Snow*, 440 F.3d 1259, 1264 (11th Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). McDonough says that he cannot establish that Harris acted in bad faith or that this lawsuit prevented the investigation of Harris's claims. McDonough is instead raising this issue to preserve it for appeal. The court will thus **DENY** McDonough's motion to dismiss Harris's retaliatory hostile-work-environment claims for failure to exhaust her administrative remedies. *See Brown, supra.*

11

### B.     Merits: Retaliatory Hostile-Work-Environment Claim

"[T]o state a claim for retaliatory hostile-work-environment, a federal-sector plaintiff must establish that, to retaliate against her for engaging in protected Title VII activity, her employer created or tolerated a work environment that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination and that environment rose to the level of a personnel action [ ]." *Buckley*, 97 F.4th at 799.

In its screening order, the court found that Harris had plausibly alleged retaliatory hostile-work-environment. (Doc. 12, pp. 7–9). As the court explained, Harris's complaint adequately alleged that Harris engaged in statutorily protected activity when she participated in a harassment prevention program and when she filed EEOC complaints. (Doc. 12, pp. 7-8). Harris's complaint detailed mistreatment "that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." (*Id.*). For example, Harris alleged that her supervisors and co-workers often placed allergens in her workspaces, made her work in a file room, disciplined her, unjustifiably procured her suspension, and falsified reports about her. (*Id.*). And Harris's allegations suggested that her harassment *could* be causally connected to one or both of the protected activities. (*Id.*, p. 9).

McDonough has not moved for summary judgment on the merits of Harris's retaliatory hostile-work-environment claim. So this court will try Harris's claim that her employer created or tolerated a hostile work environment in retaliation for Harris's participation in activity protected under Title VII.

## CONCLUSION

For the reasons stated within, the court **GRANTS IN PART** McDonough's motion for summary judgment. (Case No. 2:22-cv-193, Doc. 45; Case No. 2:22-cv-194, Doc. 47). In the consolidated case, Case No. 2:22-cv-194, Docs. 46 and 47 are duplicate filings. So the court **DENIES AS MOOT** McDonough's initial motion for summary judgment in that case. (Case No. 2:22-cv-194, Doc. 46).

The court will enter a separate order that carries out this ruling.

**DONE** and **ORDERED** on September 3, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE