## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**TIFFANY HARRIS,**
      Plaintiff,

**v.**
                   **Case No. 2:22-cv-193-CLM**

**DENIS MCDONOUGH,**
*Secretary, Department of*         *and consolidated case no.:*
*Veterans Affairs*               **2:22-cv-194-CLM.**
      Defendant.

## MEMORANDUM OPINION

After the parties picked a jury, pro se plaintiff Tiffany Harris told the court that she would not try her case unless the court admitted as a trial exhibit 289 pages of documents that Harris filed in another case. The court told Harris that it would not admit all 289 pages because Harris had not timely asked to make those pages an exhibit and many pages violated the Rules of Evidence. Harris said she would not proceed unless the court admitted all 289 pages. So the court dismissed Harris's case with prejudice under Rule 16(f)(1)(C), Rule 41(b), and the court's inherent authority to manage the courtroom. The court explains what led to this result below.

## BACKGROUND

Harris's frustration with trial exhibits stems from a combination of her misunderstanding of the hearsay rule, an unusual procedural history, and Harris's 10-month absence, during which she missed the deadline to file her exhibit list and object to the Secretary's list. The court starts by explaining the procedural history, which involves two distinct cases and records.

### A. Dual track: The Title VII case (193-194) and the MSPB appeal (828)

Harris worked for the VA until she was terminated. Generally, Harris alleged that her supervisors and co-workers harassed her. So she attended an anti-harassment program and filed discrimination complaints with the EEOC. In retaliation, Harris says her supervisors and co-workers continued harassing her in various ways, including yelling at her, placing allergens around her workplace, practicing sorcery that gave Harris sharp pains, and moving Harris into the file room to work. Ultimately, the VA fired Harris on

July 1, 2021 for inappropriate workplace conduct, failure to follow instructions, failure to report, and absences without leave.

    1. <u>Harris starts the 828 Case</u>: Eleven days later, Harris appealed her termination to the Merit Systems Protection Board. After holding a 7-hour evidentiary hearing with nine witnesses, including Harris, an administrative judge affirmed the termination in March 2021. Harris appealed that decision to the Federal Circuit, which generally handles MSPB appeals.

    2. <u>Harris files the 193-194 case</u>: Before the administrative judge issued his opinion, Harris filed two Title VII complaints in this court: Cases No. 2:22-cv-193 and 2:22-cv-194. The court consolidated the two cases (the '193-194 case') and found that Harris plausibly alleged a violation of Title VII's antiretaliation provision's participation clause and dismissed all other claims.

    3. <u>Federal Circuit transfers 828</u>: While the Federal Circuit generally handles MSPB appeals, it lacks jurisdiction to hear claims that an employer violated Title VII. *See Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 422-23 (2017). So the Federal Circuit asked Harris if she wanted to preserve her Title VII claims in this court. Harris said that she did, so the Federal Circuit transferred Harris's MSPB appeal to this court, thus creating the '828 case' (Case No. 2:22-cv-828). Because that case opened with the transfer of an administrative record, the court ordered Harris to file a complaint to start the litigation. Harris responded the next day by delivering 289 pages of documents that start with the court's pro se Complaint for Employment Discrimination, which Harris completed by hand.

    4. <u>Summary judgment in 193-194</u>: In this case, Harris pleaded two distinct claims: (1) retaliation that resulted in termination and (2) retaliation that resulted in a hostile work environment. The court granted summary judgment for the Secretary on the termination claim because Harris failed to exhaust that claim and she failed to present any evidence that would link her participation in a protected activity to her firing. (Doc. 55, pp. 7-10).

    The Secretary did not, however, ask for judgment on the merits of the hostile work environment claim, and he acknowledged that circuit precedent foreclosed his argument for failure to exhaust. So the court ruled that it must try Harris's claim that "her employer created or tolerated a hostile work environment in retaliation for Harris's participation in activity protected by Title VII." (Doc. 55, p. 12). Two days later, the court set the case for trial.

5. <u>Summary judgment in 828</u>: On the same day it granted partial judgment in the 193-194 case, the court granted the Secretary full judgment in the 828 case. As for Harris's retaliation-based claims, the court affirmed its '193-194 case' holding that Harris could not prove her termination-based claim and found that the later-filed 828 case contained a duplicative hostile work environment-based claim to the claim set for trial in the 193-194 case. The court thus dismissed the duplicative 828 claim. The court also granted the Secretary's motion for judgment on Harris's non-discrimination claims—*i.e.*, the MSPB appeal that the Federal Circuit sent to this court alongside Harris's Title VII claims.

—

As of September 5, 2024, the 828 case was dead, as were all of Harris's claims in this 193-194 case, except for her claim that the defendants created a hostile work environment in retaliation for Harris attending an anti-harassment program and filing an EEOC complaint. The court set that claim to be tried before a jury on January 27, 2025, and set deadlines to file witness and exhibit lists and objections to the opposing party's lists. (Docs. 49, 57). Unfortunately, neither the court nor the Secretary heard from Harris during the 10 months leading up to trial.

## B. Harris's 10-month absence

Because Harris was a pro se plaintiff, the court ordered that the clerk mail all orders to Harris at the mailing address she provided. In addition, the court allowed Harris to register for email notices through CM/ECF at her personal email address. The court knows Harris monitored the email address because Harris responded to a court order on the same day in 2023 (doc. 21); she responded to the defendants' evidentiary submission within one day in 2024 (doc. 44); she told the court that she received his chambers' emails in the days leading up to the pretrial conference; and the court's chambers used the address to communicate with Harris and the Secretary's attorneys in the weeks between the first pretrial conference and trial.[1] Yet despite Harris receiving a copy of filings by postal mail and electronic mail, Harris did not participate from February 25, 2024 to January 10, 2025. The court starts, though, a few months earlier.

1. <u>Early issues</u>: After the court ruled that Harris could proceed on one count (doc. 12) and the defendants answered Harris's complaint (doc. 19), the

---

[1] Harris and all counsel were copied on all emails.

parties failed to meet as required by Rule 26(f). So the court ordered them to meet at the Anniston courthouse. (Doc. 20). The same day, Harris moved to transfer the case to the Eleventh Circuit (doc. 21), a motion the court treated as a notice of appeal and ultimately denied for lack of jurisdiction.

When the Circuit Court issued its mandate three months later (doc. 26), the parties again failed to meet as required by Rule 26(f). So the court again ordered them to meet at the Anniston courthouse. (Doc. 27). Harris asked the court to allow her to meet by phone rather than in person (doc. 28), which the court allowed (doc. 29). The parties conferred by phone; the court entered a scheduling order; and, the Secretary deposed Harris on November 27, 2023, at the Hugo Black Courthouse in Birmingham. (Doc. 43-15).

After that, Harris appeared only one more time until January 2025. On February 25, 2024, the Secretary filed his evidentiary materials in support of his soon-to-be-filed motion for summary judgment. (Doc. 43). The next day, Harris responded by filing an "evidentiary submission" (doc. 44) that did not include any evidence; rather, it was a typed narrative that was largely cut-and-pasted from Harris's amended complaint (doc. 7, pp. 8-20).

2. Harris's absence: The next day (February 27), the Secretary moved for summary judgment and filed a supporting brief. (Docs. 46-47). The day after, the court ordered Harris to respond to the Secretary's motion by March 20, and ordered the clerk to mail Harris a copy of the court's instructions that explained how to respond. (Doc. 47). Harris never responded. But as explained, the court ruled that Harris's hostile work environment claim must still proceed to trial because the Secretary did not move for judgment on the merits, and the court had already ruled that Harris pleaded enough facts to prove her claim if a jury believed her testimony.

As a result, the court ordered the parties to file exhibit and witness lists, then respond to the other party's lists so the court could rule on any motions before the pretrial conference. The Secretary complied (docs. 52, 53); Harris did not. Indeed, Harris filed nothing for 10 months:

- Harris did not response to the Secretary's motion for summary judgment (docs. 45-46)

- Harris did not respond to the Secretary's motion for leave to file a second motion for summary judgment after the court denied the first (doc. 58);

- Harris did not respond to the Secretary's motion to extend the trial date (doc. 48);

- Harris did not object or otherwise respond to the Secretary's witness and exhibit lists (docs. 52-53);

- Harris did not respond to the Secretary's motion in limine (doc. 60); and,

- Harris did not file her own witness or exhibit list.

The Secretary says he asked for Harris's position on the motions to continue and to file a second summary judgment motion, but Harris never responded.

As a result, when the pretrial conference began on January 10, 2025, the court did not know if Harris intended to offer any witnesses or exhibits at trial—or, frankly, whether Harris would even appear. She did, and she said she wanted to try her case, thus beginning the quest to determine what exhibits Harris could present at trial (despite ignoring the court's order to submit an exhibit list).

## C. Harris's trial exhibits

1. <u>First pretrial conference</u>: After introductions, the court started the conference by asking the Secretary to explain what he wanted the court to exclude from evidence. The Secretary explained that in filings and during her deposition, Harris would rely on statements that Harris said she overheard her co-workers make. So the court explained the hearsay rule to Harris, and told Harris that she could only testify about facts she knew (not what others told her). Harris said she understood.

The court then asked Harris if she wanted to offer any documents as evidence. She said not all of her documents, but "certain documents" that she had submitted to the court. The court asked Harris if she could identify which ones, and she said, "not offhand." Rather than make Harris identify specific documents, the court ordered the Secretary's attorney to review the documents Harris filed in this case (Docs. 7, 11, and 44), then email the court and Harris with a list of the ones the Secretary objected to and which ones he didn't. The court set a follow-up phone conference for January 22nd.

2. <u>Second pretrial conference</u>: The Secretary complied. Before the court ruled on the Secretary's objections, however, the court again explained the hearsay rule to Harris and reminded her that her termination claim had been

dismissed, so documents about her termination or the appeal of her termination would be excluded from this trial. Harris said she understood. The court then excluded certain documents from Harris's case in chief, mostly because the documents contained Harris's own hearsay narrative of the facts. The court told Harris that while the hearsay rule forbid her from presenting the documents as exhibits, she could testify about the same facts and she could introduce as exhibits her 15th Amended Complaint to the EEOC (doc. 7, pp. 21-28) and the EEOC's final order (doc. 7, pp. 90-93). The court told Harris that his staff would extract her 15th Amended Complaint and label it as Plaintiff's Exhibit #1, and that the Secretary had already listed the EEOC order as Exhibit #40, which she could use. Harris said she understood.

3. <u>Trial Day, before voir dire</u>: The court convened the parties at 8:15am, before it qualified the jury. As promised, the court created Plaintiff's Exhibit #1 and gave Harris a paper copy. The court also provided a digital copy to the Secretary's technical staff so they could project it for Harris. The court then explained to Harris how she could present her exhibits while testifying.

Harris asked the court how she could present her case if only "selected documents" were presented. The court reminded Harris that it had ordered the Secretary to go through all of the documents she submitted in this case, and the court applied the relevance and hearsay rules to determine which ones Harris could use and which ones she could not.

Harris responded that her "original documents" had about 300 pages and again questioned why she was being limited. The court asked Harris to specify what document she wanted to present but wasn't allowed to. The court then read back through the 193-194 case docket and noted that Harris filed nothing that resembled 300 pages.

The Secretary's counsel then noted that the administrative record in the transferred 828 case had over 500 pages and that he was scrolling through the 828 docket with Harris at her table. Harris asked the court if the jury could see the pictures from document 8 of the 828 case—*i.e.*, the 289 pages of documents Harris delivered after the court ordered her to file a complaint. After the court asked questions to establish foundation for the pictures (as requested by the Secretary), the court told Harris that she could show the pictures to the jury and asked the parties to work on getting color copies ready while the court qualified the jury. The court also asked its technical staff to help Harris connect to the wireless internet so she could look through the record and otherwise prepare. With that, the court left to qualify the jury, believing the exhibit issues were exhausted.

**D. Dismissal after jury selection**

The court qualified the jury, and the court and parties questioned them in the jury assembly room. The court took the parties back to the courtroom, where they submitted their strike forms, and the court announced the jury.

Before leaving to retrieve the jury, the court asked whether the parties had prepared the color pictures to be shown during Harris's testimony. They said yes. They also said that Harris wanted to admit another exhibit.

Everything went downhill from there.

Harris told the court that she wanted to introduce as an exhibit all 289 pages of document 8 from the 828 case. The court said no, explaining that it had gone through every document Harris filed in the 193-194 case to cull out admissible evidence for her, plus it was allowing her to use the pictures from the 828 case. The court also told Harris she could use any of the Secretary's exhibits once admitted. But, the court explained, it could not admit all 289 pages from the dismissed 828 case without applying the same evidentiary rules it applied to the documents Harris submitted in the 193-194 case about to be tried. The court also reminded Harris that she hadn't submitted an exhibit list as required to give the Secretary and the court notice of what she wanted to show the jury.

But understanding that Harris was proceeding pro se, the court asked Harris to point to specific documents she wanted to admit so the court could determine whether to add those documents to Harris's exhibit list. The court asked that question many times. And Harris repeatedly refused to state specifics; she wanted everything. The court told Harris that she could take everything with her to the stand to refresh her recollection if needed, but the court could not put an exhibit sticker on a 289-page batch of documents from another case without subjecting each page to the Rules of Evidence.

Sometime during the back-and-forth, Harris said she emailed the documents she wanted to use to the Secretary's attorneys. So the court asked for a printed copy of the emailed documents and vowed to go through every page, applying the Rules of Evidence. Before the court could, though, Harris said that the emailed documents didn't contain everything she submitted in the 828 case, and that's what she wanted to admit.

Harris again went back-and-forth with the court until finally the court said it was going to rule, bring up the jury (who had been waiting on another floor the whole time), and start the case. Harris talked over the court as it

tried to rule, prompting the court to tell Harris it would hold her in contempt and stop the trial if she persisted.

The court ruled that Harris could admit the two exhibits mentioned in the pretrial conferences plus the pictures from the 828 case. The court told Harris that she could use any admitted exhibit from the Secretary's binder of exhibits as part of her case. And the court would go page-by-page through the documents she emailed that morning to determine their admissibility. But the court would not search through all documents filed in the 828 case.

Harris responded, "I am not moving forward unless there are 300 or more documents." The court told Harris that it was leaving to retrieve the jury, and if Harris maintained her position when the court returned, the court would allow her to dismiss her case. Harris told the court her mind was made up: She wasn't moving forward without all 300 pages.

So rather than retrieve the jury, the court took an 18-minute break, during which the Clerk's office told the court that Harris hand delivered 289 pages in the 828 case; that the Clerk had trouble uploading all 289 pages on its first attempt (828 case, doc. 8); but, the Clerk successfully uploaded all 289 pages and labeled the batch "Recanned Complaint" after Harris pointed out the missing pages (828 case, doc. 8-1).

The court returned to the courtroom and recounted this history. Harris complained that the Clerk uploaded the 289 pages in the 828 case but not the 193-194 case.[2] The court then asked Harris whether the documents the Clerk added in the 828 case contained different documents or the same documents as the documents in the 193-194 case. Harris responded: "They are the same documents." When the court reminded Harris that it had given her the chance to go through every document in the 193-194 case to identify the parts she wanted to use, she said, "I want the entire document."

After again telling Harris that she could not admit all 289 pages without vetting them against the Rules of Evidence, Harris told the court she would not move forward. The Secretary moved to dismiss for failure to prosecute, and the court granted the motion under Rules 16(f)(1)(C), Rule 41(b), and the court's inherent authority to manage the courtroom.

---

[2] As explained, Harris submitted the 289 pages in response to the court's order to file a complaint in the 828 case. Harris hand wrote the 828 case number on her pro se complaint (828 case, Doc. 8-1, p.1), and she typed the 828 case number on her accompanying factual narrative (*id.*, p. 8). So the clerk understandably filed Harris's documents in the 828 case, not the 193-194 case.

## DISCUSSION

District Courts must apply the Rules of Evidence in all civil cases, even those featuring pro se plaintiffs. *See* Fed. R. Evid. 101, 1101(a), 1101(b). Even a quick glance at Harris's 289-page submission in the 828 case reveals layers of hearsay, including Harris's fact allegations (pp. 8-21), Harris's original, first supplemental, and second supplemental affidavits to the EEOC (pp. 31-72, 73-78, 79-90), and a slew of emails between Harris, her co-workers, and her supervisors (*e.g.*, pp. 98-128). Plus, many pages relate to Harris's termination, which supported a dismissed and thus irrelevant claim. That said, parts of the 289 pages contained relevant, admissible information. For example, the pictures of Harris's work station tend to make Harris's allegation that her co-workers spread allergens to make Harris sick more or less probable, so the court ruled she could introduce them. *See* Fed. R. Evid. 401. That's why the court told Harris that it would have to go page by page to determine what she could and could not admit as evidence.

But Harris would not accept application of the rules to her case in chief. Nor did she think it was fair that the Secretary's exhibit binder contained her out-of-court statements, twice accusing the court of being biased toward the Secretary rather than understanding or accepting that the rules allow her opponent to use her statements against her as impeachment. *See* Fed. R. Evid. 801(d)(2). She refused to move forward unless the court suspended the rules for her. Harris's refusal to try her case thus created three independent bases for dismissing her hostile work environment claim with prejudice. *See Germany v. City of Huntsville*, 2024 WL 126816 (11th Cir. Jan. 11, 2024) (affirming dismissal of a pro se plaintiff's case during trial under Rule 16(f), Rule 41(b), and the court's inherent authority to control its courtroom).

## A. Rule 16(f)(1)(C): Failure to comply with pretrial orders.

This case shows why pretrial orders must be followed. Otherwise, chaos ensues at trial.

Rule 26(a)(3)(A)(iii) required Harris to separately list every document that she intended to offer at trial and to provide that list to the Secretary and file it in the case docket. The court ordered Harris to do so by August 16, 2024. (Doc. 49). She failed to meet that or any other pretrial deadline.

Rule 16(f)(1)(C) allows the court to enter "just orders" if a party "fails to obey a scheduling or pretrial order." This rule is "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes

with the expeditious management of trial preparation." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).

While it could have, the court didn't "punish" Harris's failure to comply with its pretrial orders at first because Harris was proceeding pro se, and the court built enough time in between the pretrial conference and trial to determine whether Harris had admissible evidence. As explained, the court worked with Harris on building her trial exhibit list, often by ordering the Secretary's counsel to help Harris. This resulted in Harris being allowed to introduce as her own exhibits two documents and five pictures that she failed to timely identify under the rules and the court's orders. Had Harris left it there, the court would not have sanctioned her under Rule 16.

But Harris insisted that the court allow her to introduce all 289 pages of materials she filed in the 828 case; an argument she didn't make until the morning of trial. As described, those pages were chock-full of inadmissible hearsay and irrelevant information about her firing. Other pages contained admissible information like the pictures of Harris's work station. It would have taken hours (at least) for the court to sift through these documents to issue an evidentiary ruling and redact inadmissible parts—hours in which the opposing party and eight jurors were waiting to start trial.

This delay would have been "unreasonable" and would have "interfere[d] with the expeditious management of trial preparation." *Goforth*, 766 F.2d at 1535. And it could have been avoided had Harris complied with the court's pretrial order and Rule 26(a). Because Harris refused to proceed with the trial until the court ruled in her favor on every piece of the 289 pages, dismissal was the only just order under Rule 16(f).

## B. Rule 41(b): Failure to prosecute

Rule 41(b) allows a defendant to move for dismissal with prejudice if the plaintiff fails to prosecute or violates a court order. The Eleventh Circuit has held that a district court can grant a Rule 41(b) motion if (1) the plaintiff engaged in a clear pattern of delay or willful contempt and (2) a lesser sanction would not suffice. *Betty K. Agencies, LTD v. M/V Monada*, 432 F.3d 1333, 1337-38 (11th Cir. 2005). Harris met both elements.

First, Harris engaged in a clear pattern of willful contempt of the rules and court decorum during the first day of trial. As explained, Harris refused to accept the court's application of the Rules of Evidence and demanded the court allow her to hand 289 pages of mostly inadmissible evidence to the jury.

And Harris said in no uncertain terms that she would not proceed to trial unless the court changed its mind about applying the rules to her case.

Second, no lesser sanction would suffice. The court tried to work with Harris through both pretrial conferences and the morning of trial. The court offered to allow Harris to offer admissible parts of the 289 pages and to require the Secretary's technical staff to display them for the jury. But Harris refused to accept anything short of full admission. Once Harris made it clear that she would not move forward if the court was going to enforce the Rules of Evidence against her, dismissal was the only option.

## C. Court's inherent authority to manage its courtroom

Finally, the court has the inherent authority "to sanction parties for 'violations of procedural rules or court orders,' up to and including dismissals with prejudice." *Germany*, 2024 WL 126816, at * 8 (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1557 n.6 (11th Cir. 1987)). The court adopts its analysis in Parts A and B and applies them here to find that Harris violated procedural rules and court orders. The court finds two more reasons that Harris's actions made dismissal an appropriate sanction.

First, Harris was wasting the jury's time. Among others, the jury pool included a doctor, two nurses, a high school teacher, a college student, a stay-at-home mother, and two primary caregivers for elderly parents. Each juror had to suspend his or her life, and cause hardship to his or her employer or family, to hear Harris's case. Once it became clear that Harris would not move forward, there was no reason to keep jurors at the courthouse.

Second, Harris was becoming increasingly dismissive of the court, the court's rulings, and court decorum. Harris persistently talked over the court once the parties returned from jury selection. Harris was openly hostile to the court applying the rules to documents she created because, in her view, applying the rules was unfairly preventing her from presenting her case. And Harris twice accused the court of ruling however the Secretary wished. Jurors should perceive federal courts as dignified and just; not a daytime court show in which the parties snipe at each other and the judge. The court had reason to believe that Harris's case would devolve into the latter once she took the stand and the court had to start ruling on evidentiary objections. *See Germany*, 2024 WL 126816, at *9 (affirming dismissal with prejudice in part because the pro se plaintiff openly questioned and defied the court's rulings during trial).

—

To sum up, Harris failed to follow the court's order to submit an exhibit list before trial, then she refused to accept the court's evidentiary ruling on her last-minute request to admit 289 pages of documents that mainly consisted of Harris's own out-of-court recollections of the facts. The court tried to help Harris, but she refused to accept anything short of abandonment of the Rules of Evidence on her behalf. As a result, the only just option was to dismiss Harris's case and release the jury.

The court will enter a separate order that dismisses Harris's remaining claim with prejudice and directs the Clerk to close this case.

**Done** and **Ordered** on February 6, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE